IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CA No.: 5:24-cv-00381

| | | |
|---|---|---|
| DWAYNE BISSETTE, on behalf of himself and all others similarly situated, | ) ) ) | |
| *Plaintiff,* | ) ) | **COLLECTIVE/CLASS ACTION** |
| v. | ) ) | **COMPLAINT** |
| SECURITAS SECURITY SERVICES USA, INC., | ) ) ) | |
| *Defendant.* | ) ) ) | |

COMES NOW, Dwayne Bissette ("Plaintiff"), on behalf of himself and all others similarly situated, (collectively "Plaintiffs") by and through undersigned counsel, and hereby sets forth this collective action for violation of the Fair Labor Standards Act under § 216(b), and a representative action under the North Carolina Wage and Hour Act pursuant to Fed. R. Civ. P. 23, and alleges and follows:

## PRELIMINARY STATEMENT

1.    Named Plaintiff, on behalf of himself and all others similarly situated, brings this action against Defendant Securitas Security Services USA, Inc., ("Defendant Securitas" or "Securitas") under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. and the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1 *et. seq*., for not fully compensating employees who have or have worked at Defendant Securitas.

2.    Plaintiffs consist of current and former employees working as non-exempt hourly paid security guards and/or site supervisors.

3.    With respect to Securitas's obligation to comply with its statutory obligation pursuant to the FLSA, Defendant Securitas is aware of Plaintiffs working generally in excess of

forty (40) hours per week as Defendant Securitas has suffered or permitted, and in fact required, Plaintiffs to work in excess of forty (40) hours per week on a regular basis without being properly compensated time and one-half (1.5) for hours over 40 per week.

4.     Plaintiff was an employee of Defendant for nearly two (2) years. During his employment, Plaintiff worked for Defendant Securitas as a site supervisor but was not properly compensated for all hours worked through the date of his wrongful termination on July 6, 2023. During Plaintiff's employment, Defendant Securitas willfully failed and refused to compensate Plaintiff all wages, including for all hours worked, and modified records to avoid compensating Plaintiff for all hours worked in excess of forty (40) in a week at a rate of one-and-one-half-times his regular rate, due and owing to Plaintiff, in direct violation of the FLSA, 29 U.S.C. § 201 *et seq*.

5.     Plaintiff also brings this action against Defendant for failing to pay Plaintiff all earned and accrued wages, including, but not limited to, promised straight-time compensation, the promised premium compensation for hours in excess of forty (40) per week, in direct contravention of the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1, *et seq*.

6.     Defendant's pay practices and policies were in direct violation of the FLSA. Accordingly, Plaintiff seeks any unpaid overtime compensation, liquidated damages, post-judgment interest, and attorneys' fees and costs.

7.     Plaintiff Bissette brings this action on his own behalf and, pursuant to 29 U.S.C § 216(b), as a representative of a proposed collective action of similarly situated employees:

> All individuals who were, are, or will be employed by Defendant Securitas's as hourly non-exempt employees who were not compensated for all of their hours worked, including, but not limited to, above forty (40) per week any time within three years prior to the commencement of this action, through the present.

8.     Defendant Securitas is liable for its failure to pay Plaintiffs for all work performed, and at the appropriate overtime rate for hours worked in excess of forty (40) per week.

2

9.      Plaintiffs who elect to participate in this FLSA collective action seek compensation for all statutory overtime wages, an equal amount of liquidated damages, post judgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

10.      Plaintiff also brings this action, on his own behalf, and as a representative of similarly situated current, former or future hourly non-exempt security guards or site supervisors employed by Defendant Securitas in North Carolina, under the NCWHA.

11.      With respect to Plaintiff's NCWHA claims, despite notifying Plaintiffs of their non-exempt hourly status, promised overtime eligibility, hourly rates, promised bonuses, shift differentials, and Defendant Securitas's commitment to compensate employees for all hours worked, including both for hours less than and in excess of forty (40) hours per week through an employee handbook and/or earning statements, Plaintiff and others similarly situated were not always paid consistent with Securitas's written policies and practices in violation of N.C. Gen. Stat. § 95-25.6.

12.      Specifically, despite Securitas's written policies and practices and as communicated to Plaintiffs, Plaintiffs were not compensated for all of their hours worked, (including time spent working off the clock), promised straight time for hours less than 40 per week, promised holidays, promised vacation, promised premium rates for hours worked over 40 per week, and/or incorporated bonus earnings and/or shift differentials in determining the appropriate premium rate(s) in connection with hours worked in excess of forty (40) hours per week, in violation of Securitas's written policies as required by the NCWHA.  Therefore, such uncompensated wages were earned, accrued, and remain unpaid in violation of N.C. Gen. Stat. § 95-25.6.  These claims are separate and distinct from the FLSA.

13.      Plaintiff, who is a North Carolina resident and who worked for Defendant Securitas

3

in North Carolina, asserts that he and the putative class, who works or worked in North Carolina for Defendant Securitas, are entitled to compensation relating to promised but unpaid bonuses, vacation days, holidays, shift differentials, and for all work performed for Defendant Securitas, whether the workweek totaled greater or fewer than forty (40) hours, compensation at the appropriate regular or promised rate for hours worked less than 40 per week, and/or the promised and/or appropriate premium rate for all hours worked in excess of forty (40) per week, especially during workweeks when bonuses and/or shift differentials applied but were not included as part of the regular earnings for determining the appropriate premium rate(s) , and/or bonuses that were promised but were unpaid, and for an equal amount of liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to N.C. Gen. Stat. §§ 95-25.13, 95-25.6, 95-25.22(a), (a1), and (d).  These promises are not enforceable under the FLSA, and thus the NCWHA is more stringent and provides greater protections to North Carolinians than the FLSA.

14.     Plaintiff seeks class certification under Rule 23 of the Federal Rules of Civil Procedure for the following class of Defendant Securitas's employees in North Carolina:

> All Individuals who were, are, or will be employed by Defendant Securitas as hourly non-exempt employees who were not compensated all promised, earned, and accrued wages due to Defendant Securitas's policies, including, but not limited to, compensation relating to promised but unpaid bonuses, vacation days, holidays, shift differentials, and for all of their hours worked up to forty (40) in a week and for hours worked above forty (40) in a week within two years prior to the commencement of this action, through the present.

15.     This action is also brought by Plaintiff to remedy Defendant's unlawful acts under the North Carolina Retaliatory Employment Discrimination Act ("REDA"), N.C. Gen Stat. § 95-240 *et seq*., for discriminating against Plaintiff following Plaintiff's complaints on behalf of himself and the employees under his immediate supervision regarding not receiving all of their earned, accrued, and promised wages, and Defendant subsequently terminating Plaintiff as a result

of these complaints and inquiries. Defendant failed to comply with its obligations under the FLSA and ultimately terminated Plaintiff in violation of the REDA and North Carolina public policy.

16.     Accordingly, Plaintiff seeks all available relief for these claims, including but not limited to back pay, front pay, liquidated and/or treble damages, past pecuniary losses, prejudgment interest, compensatory damages, punitive damages, attorneys' fees and costs, and all other relief permitted by applicable law.

## JURISDICTION AND VENUE

17.     The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 for the claims brought under the FLSA, 29 U.S.C. § 201, *et seq*.

18.     The United States District Court for the Eastern District of North Carolina has personal jurisdiction because Defendant conducts business throughout North Carolina, including, but not limited to, Wake County, New Hanover County, Guilford County, Buncombe County, and Mecklenburg County. Wake County and New Hanover County are located within this district.

19.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 1391(c), because at all relevant times, Defendant conducted business within the Eastern District of North Carolina, and all or part of the events or omissions giving rise to these claims occurred in this District.

20.     The claims for violations of the NCWHA and REDA are based upon the statutory law of the State of North Carolina.

21.     Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 for the pendent state claims because they arise out of the same nucleus of operative facts as the FLSA claims.

22.     All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness, and convenience for the parties.

23.     The evidence establishing liability for all causes of action will be similar, and neither issue will predominate nor create confusion for a jury.

## CONDITIONS PRECEDENT TO FILING A LAWSUIT

24.     On or about December 22, 2023, Plaintiff filed a REDA complaint with the North Carolina Department of Labor (NCDOL).

25.     On or about April 1, 2024, the NCDOL issued Plaintiff Notice of a Right to Sue to Plaintiff against Defendant, attached hereto as Exhibit A.

26.     Plaintiff has therefore exhausted all administrative remedies prior to commencing this action under REDA.

## PARTIES

27.     Plaintiff is an adult resident of Wilson County, North Carolina. He worked for Defendant as an hourly-paid, nonexempt employee from approximately September 15, 2021 until his wrongful termination on or about July 6, 2023.

28.     Upon information and belief, Defendant Securitas Security Services USA, Inc. is a foreign business corporation providing on-site, remote, and mobile security services to clients that is organized under Delaware law and is authorized to do business in the State of North Carolina. Defendant may be served with process through their registered agent, National Registered Agents, Inc. at 160 Mine Lake Court, Suite 200, Raleigh, NC 27615-6417.

## COVERAGE

29.     At all relevant times, Defendant has acted, directly or indirectly, in the interest of an employer with respect to Named, opt-in, and putative Plaintiffs.

30.     At all relevant times, Defendant maintained control, oversight, and direction over Plaintiff and similarly situated employees, including hiring, firing, disciplining, timekeeping,

6

payroll, and other employment practices.

31.     At all relevant times, Defendant was an employer within the meaning of the FLSA, 29 U.S.C. § 203(d), and the NCWHA, N.C. Gen. Stat. § 95-25.2(5).

32.     At all relevant times, Plaintiff was an employee within the scope of the FLSA, 29 U.S.C. §§ 206 and 207.

33.     At all relevant times, Defendant was an enterprise engaged in related activities performed through a unified operation or common control for a common business purpose, as defined by the FLSA, 29 U.S.C. § 203(r).

34.     Upon information and belief, Defendant is an enterprise engaged in commerce or in the production of goods for commerce as defined by the FLSA, 29 U.S.C. §§ 203(a), 203(s). Defendant is engaged in commerce or in the production of goods for commerce, because, *inter alia*, it has employees that handle goods and materials that have been produced for and moved in commerce, and, upon information and belief, its annual gross volume of business is at least $500,000.00. These goods and materials that have been produced for and moved in commerce, which its employees have handled.

## WAGE-RELATED FACTUAL ALLEGATIONS COMMON TO THE FLSA & NCWHA

35.     Defendant is in the business of providing on-site, remote, and mobile security services to its clients globally and nationally, including within the State of North Carolina.

36.     Upon information and belief, Defendant maintains office locations across North Carolina in Raleigh, Wilmington, Greensboro, Asheville, and Charlotte in addition to its "mobile" locations.

37.     Upon information and belief, Defendant has a contract with Universal Leaf North America U.S., Inc., a non-party engaged in the business of purchasing, processing, and selling

7

tobacco products, to provide security and guarding services.

38.     Upon information and belief, Defendant Securitas has approximately ninety-thousand (90,000) employees who engage in security services.

**Hiring:**

39.     Plaintiff first began his employment with Defendant on or about September 16, 2021, as a site supervisor for the Universal Leaf client site. Defendant's local office is located at 2500 Gateway Centre Blvd., Suite 750, Morrisville, NC 27560. The Universal Leaf client site is located at 3174 Boddie Mill Pond Rd., Nashville, NC 27856.

**Pay:**

40.     Plaintiff was hired as a full-time, non-exempt employee at an hourly rate of $16.00 on a weekly pay schedule and began employment on or about September 15, 2021.

41.     Approximately one year later, beginning the week of September 16, 2022, Plaintiff received a raise of his hourly rate to $17.00.

**Job Duties:**

42.     Plaintiff's duties as a site supervisor included, but were not limited to, supervising security officers; staff scheduling; ensuring proper employee coverage for the site; providing counseling to officers; training new hires; writing reports; submitting site payroll records; monitoring security cameras; responding to alarms; performing access control of visiting vehicles; monitoring activity at the receiving gate; and processing scheduling updates from visiting vehicles.

43.     During his employment with Defendant, Plaintiff supervised a team of three (3) full-time officers, one (1) part-time officer, and two (2) fill-in or "float" officers.

8

**Timekeeping:**

44.     Upon information and belief, when Plaintiff first began working with Defendant, employees were expected to record hours worked on paper timesheets submitted to Defendant. Defendant then sent copies of the paper timesheets to the relevant client (i.e., Universal Leaf in this case) for approval. Later, upon information and belief and on an unknown date, Defendant introduced a timekeeping system requiring employees to call an automated system to record their hours.  However, Plaintiff and those similarly situated were not allowed to properly record all of their hours worked.

**Work Schedule:**

45.     Plaintiff was typically scheduled to work Monday through Friday from 2:00pm to 10:00pm.

## NCWHA WAGE-RELATED FACTUAL ALLEGATIONS

46.     According to the NCWHA "wage" includes bonuses and *other* amounts promised, including hours up to forty (40) each week (and in excess of forty (40) hours per week), when the employer has a policy or a practice of making such payments. NC Gen. Stat. § 95-25.2(16), irrespective of any FLSA statutory obligation Securitas has to pay overtime for hours over 40 per week, since such statutory obligation does not include unpaid earned and accrued wages and is not recoverable under the FLSA.

47.     Defendant's failure to compensate Plaintiffs for all properly recorded or unrecorded hours worked, including, but not limited to, all work performed from the time Plaintiffs clocked in through the time Plaintiffs clocked out, in addition to pre and post-shift activities (on or off the clock), work performed during lunch breaks,  up to and in excess of forty (40) hours per week,

9

unpaid holidays, vacation, shift differentials, and bonuses, has resulted in a failure to pay employees all promised, earned, and accrued wages.

48.    Defendant Securitas's failure has affected Named, Opt-in, and all putative Plaintiffs similarly.  Additionally, Plaintiff Bissette and others similarly situated were promised premium pay for all hours worked at time and one half consistent with written policies as laid out in their handbook, (irrespective of Securitas's statutory overtime obligation under the FLSA). Since there up to ten (10) hours per week that Plaintiff estimates he was not paid for, those hours were either not paid at the promised straight time rate(s) during hours worked less than 40 or at the promised premium rates for hours in excess of 40 per week.

**Pre-Shift Work**:

49.    In addition to working his regularly scheduled hours as described *supra* ¶ 42, Plaintiff necessarily engaged in ten- (10) to fifteen- (15) minutes of pre-shift activities before his recorded start time and an additional fifteen- (15) to thirty- (30) minutes of post-shift activities after his recorded end time that included scheduling and payroll duties.

50.    Plaintiff's pre-shift activities included checking in at the receiving gate, getting updates about the day's schedule for incoming trucks, making sure staff members were in their assigned places, and getting prepared for the day's shift. These pre-shift tasks were necessary for the completion of Plaintiff's principal job duties as site supervisor in performing access control of visiting vehicles, supervising security officers at the client site, and managing security officers' schedules relative to the site's needs each day.

**Post-Shift Work:**

51.    In addition to his regularly scheduled hours as described *supra* ¶ 42, Plaintiff

necessarily engaged in approximately fifteen (15) to thirty (30) minutes of off-the-clock, post-shift activities.

52.     Plaintiff's post-shift activities included writing and submitting site payroll reports. These payroll reports needed to be completed and submitted daily to account for rotating flex officers. Plaintiff was also required to produce *advance* schedules for the following week so that the district manager could anticipate expected coverage. These post-shift tasks were necessary for Plaintiff's principal duties as site supervisor in managing security officers' schedules and timely submitting the site payroll records.

53.     These off-the-clock pre-shift and post-shift work activities needed to be conducted outside regular hours because Plaintiff was given no time to complete this work during his scheduled shift and because employees lacked on-site internet access. Furthermore, these activities needed to be performed daily because Defendant also employed float officers who would only work on a particular site for a day before filling in other shifts at other sites. Plaintiff's pre- and post-shift work activities were known by Plaintiff's supervisors at all relevant times. Therefore, Plaintiff worked an average of twenty-five (25) to forty-five (45) minutes of unpaid, off-the-clock pre- and post-shift activities every day he was regularly scheduled to work.

54.     In light of the numerous compensation policies and practices Defendant Securitas did not comply with in violation of the NCWHA, N.C. Gen. Stat. § 95-25.6.  Plaintiff estimates that for just him alone, he is due approximately $160.00 per week for unpaid straight-time for an estimated $8,320 for only one year period preceding the filing of the complaint. Additionally, these estimated damages under the NCWHA do not include prejudgment interest at 8% and *mandatory* liquidated damages (not recoverable under the FLSA).

55.     Named Plaintiff Bissette's earnings statements also reflect that on at least two (2)

occasions, Named Plaintiff's compensation was retroactively and arbitrarily reduced resulting in zero (0) dollar net payments. For example, on November 10, 2021, Named Plaintiff's pay slip showed that a total of $686.00 was subtracted for the pay period between October 22 to October 28, effectively canceling out his earned wages of $686.00 for the pay period between October 29 to November 4. A similar retroactive reduction occurred again on March 3, 2022, when Named Plaintiff's earning statement showed that a total of $66.00 was subtracted for the pay period between February 11 to February 17, reducing Plaintiff's total earned wages of $416.00 to $350.00 for the pay period between February 18 to February 24. As such, Plaintiff is also due unpaid promised wages due to an arbitrary reduction of the same.

**Promised Hourly Wage Increase:**

56.    Defendant promised to pay all hourly-paid, non-exempt Plaintiffs at the Universal Leaf client site an increased hourly rate to address employee retention concerns. Despite such promises, Plaintiffs were not paid accordingly.

57.    Additionally, despite being owed an hourly rate of $16.00, Plaintiff was only paid an hourly rate of $14.00 for the first seven (7) weeks of Plaintiff's employment. Furthermore, beginning the week of November 5, 2021, Plaintiff's hourly rate constantly fluctuated between $14.00, $15.00, and $16.00.

**Promised Monthly Hours Bonus:**

58.    Defendant also promised to pay all Plaintiffs employed as site supervisors a non-discretionary bonus for every four (4) consecutive weeks in which all employees collectively worked fewer than one-hundred-sixty-five (165) hours per week. Despite such promises, Plaintiff were not paid accordingly.

12

**Promised Finders' Fee Bonus:**

59.     Defendant also promised to pay Named Plaintiff Bissette a "finders fee" bonus for securing an additional temporary contract with the Universal Leaf client site to provide coverage at its warehouse location in Rocky Mount, NC. Despite such promises, Named Plaintiff was not paid accordingly.

**FLSA WAGE-RELATED FACTUAL ALLEGATIONS**

**Unpaid Overtime Hours:**

60.     In addition to his regularly scheduled hours described *supra* ¶ 42, Plaintiff engaged in approximately twenty-five (25) to forty-five (45) minutes of off-the-clock pre-shift and post-shift compensable activities daily, resulting in a minimum of 2.1 to 3.75 hours unpaid overtime hours per week.

61.     Furthermore, Plaintiff was also required to cover callouts, resulting in working additional overtime hours.

62.     Moreover, with Plaintiff's assistance, Defendant entered into short-term contracts to provide coverage for a warehouse operated by the Universal Leaf client site. Twice a week every two weeks for the total five (5) month period during these short-term contracts, Plaintiff covered for another supervisor until the supervisor could get to the appropriate site, resulting in an average of two (2) to three (3) hours of off-the-clock work for each instance scheduling and supervising staff. Plaintiff was also required to drive to the warehouse, located in Rocky Mount, NC, to collect the keys from the previous night's shift, and return the keys to the client site's main location in Nashville, NC, which amounted to an additional one hour of off-the-clock compensatory time each day of work at the warehouse location during the short-term contracts.

13

63.     In consideration of both recorded and unrecorded hours, Plaintiff therefore worked an average of forty (40) to fifty (50) hours per week. As such, Plaintiff is owed approximately $120.00 to $240.00 for simply *one* week of unpaid overtime wages.

## RETALIATION AND WRONGFUL TERMINATION ALLEGATIONS

64.     Plaintiff repeatedly raised wage and hour concerns on behalf of himself and the officers under his supervision with Defendant's district managers and with the Human Resources ("HR") department.

65.     Plaintiff first reported issues concerning overtime hours incorrectly recorded in the timesheets, problems with recording time in Defendant's timekeeping system, and the regular and overtime rates paid to him and the other officers to DM Meterko verbally, either in person or over the phone, and to Human Resources Manager ("HR-M") Collette Evans. Most, if not all, of Plaintiff's concerns went unresolved.

66.     DM Meterko was replaced by DM Anthony Trevino on approximately June 5, 2023. On or about this time, Plaintiff notified DM Trevino of numerous wage and hour concerns, including off-the-clock work required to be performed at home, the lack of internet access at the client site, and unpaid benefits on behalf of several officers under Plaintiff's supervision. Plaintiff also informed DM Trevino that he and the other flex officers should be receiving a one dollar raise on their regular rate.

67.     During the relevant time period, Plaintiff's son, Brenden Bissette ("Brenden"), was also employed by Defendant as a security officer at the Universal Leaf client site.

68.     On or about Thursday, June 29, 2023, Plaintiff again notified DM Trevino about concerns over unexpected and/or unexplained fluctuations in pay on behalf of himself as well as three (3) or four (4) other employees, including Plaintiff's son, Brenden.

14

69.    Receiving no response, Plaintiff again reached out to DM Trevino on or about Wednesday, July 5, 2023. DM Trevino then explained that because of Plaintiff's continued questioning of Plaintiff's son's pay, Brenden would need to be transferred to another location per Company Policy. Plaintiff responded that his concerns involved three (3) of the officers under his supervision, not just his son, but DM Trevino replied that Brenden would need to be moved anyway.

70.    At this time, Plaintiff offered to meet with DM Trevino in person to further discuss, suggesting that, hypothetically, it may be easier for Plaintiff to resign and change jobs rather than for Brenden to be transferred. However, Plaintiff told DM Trevino that he wanted to discuss the situation in person the following week.

71.    After this conversation, Plaintiff arrived for his scheduled shift on the same day, July 5, 2023. However, Plaintiff was informed that he would soon be relieved from his shift by a float officer.

72.    Plaintiff asked DM Trevino why he was being relieved, and DM Trevino explained that Plaintiff had resigned, and Brenden had been fired due to an incident between Brenden and Defendant's HR.

73.    Plaintiff refused to engage in further discussions regarding Brenden's termination but insisted that Plaintiff had not resigned or submitted a resignation letter nor had Plaintiff intended to resign without further conversation.

74.    Plaintiff completed his shift on July 5, 2023, and he believed from his conversation with DM Trevino that he would be allowed to continue working with Defendant.

75.    On Thursday, July 6, 2023, as Plaintiff was preparing to leave home to arrive for his scheduled shift, Plaintiff was informed that he had been fired.

76.     Plaintiff again contacted DM Trevino. DM Trevino explained that after discussing the situation with SR-VP Hoepner and HR-M Evans, Defendant would be moving forward with Plaintiff's replacement.

77.     On or about Saturday, July 8, 2023, following Plaintiff's wrongful termination and in an attempt to resolve the matter directly with Defendant, Plaintiff sent a complaint letter addressed to Defendant's SR-VP Andrea Hoepner through the EQS Integrity Line Portal explaining the circumstances of his termination, as described below, and requesting that he be reinstated with full back pay for all unpaid compensation since the start of his employment.

78.     On or about Thursday, July 14, 2023, upon receiving no substantive response to his complaint letter, Plaintiff filed an Unpaid Wages Letter to Employer, again demanding all earned, unpaid compensation.

79.     On or about Wednesday, July 20, 2023, Plaintiff sent an email inquiring into the status of the internal investigation into his claims.

80.     On or about September 27, 2023, Plaintiff was first contacted by Defendant's Vice President of Human Resources ("VP-HR") Sheree Ross. Over the next few weeks, Plaintiff and VP-HR Ross communicated via email about the investigation into Plaintiff's wage and hour complaints as well as the circumstances of his termination.

81.     On October 25, 2023, VP-HR Ross notified Plaintiff that she completed her review of all documentation, payroll entries, statements, and evidence pertaining to the investigation. VP-HR Ross indicated a non-exhaustive list of several dates on which she admitted the record reflected that Plaintiff was underpaid. VP-HR Ross calculated the unpaid wages at a total of $160.00 and offered to have Defendant's payroll department send him a check for that amount.

82.     Given Defendant's failure to provide a thorough response with an effort to fully

16

compensate Plaintiff his unpaid earned wages, Plaintiff rejected Defendant's offer to resolve the issue with a $160.00.

## FLSA COLLECTIVE ACTION ALLEGATIONS

83.     Named Plaintiff brings the First Count of the instant Complaint as a collective action pursuant to 29 U.S.C. § 216(b), on behalf of himself and all similarly situated employees.

84.     Similarly situated employees, for purposes of the FLSA collective action claims, include individuals who were, are, or will be employed by Defendant Securitas as security non-exempt hourly employees, at any time within the three (3) year period prior to the date of the commencement of this action, through the present, and who did not receive overtime for hours worked in excess of 40 hours per week.

85.     The members of the proposed collective action, like Named Plaintiff, are employed as security employees, have substantially similar job requirements and pay provisions, and are subject to common practices, policies, or plans that fail to compensate them for hours worked in excess of 40 per week at a rate of time and one half their hourly rate.

86.     Upon information and belief, there are hundreds of putative Plaintiffs and or similarly situated current and former security employees that fall within the scope of the aforementioned FLSA class.

87.     The members of the proposed collective action are known to Defendant Securitas, are readily identifiable, and may be located through Defendant's records.

88.     Pursuit of this action collectively will provide the most efficient mechanism for adjudicating the claims of Named and putative Plaintiffs.

89.     Members of the proposed FLSA class, therefore, should be permitted to pursue their claims collectively, pursuant to 29 U.S.C. § 216(b).

17

90.     Pursuant to 29 U.S.C. § 216(b), attached to and filed with the original Complaint as Exhibit B, is the Consent to File Suit as Plaintiff executed by Named Plaintiff. As this case proceeds, it is likely other individuals will file consent forms and join as opt-in plaintiffs.

91.     Named Plaintiff requests that he be permitted to serve as representative of those who consent to participate in this action and that this action be conditionally certified as a collective action pursuant to 29 U.S.C. § 216(b).

**NCWHA CLASS ACTION ALLEGATIONS**
**PURSUANT TO RULE 23 OF THE FEDERAL RULES OF CIVIL PROCEDURE**

92.     Named Plaintiff brings the Second Cause of Action of the instant Complaint as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of himself and all similarly situated employees, for relief to redress and remedy Defendant's violations of the NCWHA, N.C. Gen. Stat. § 95-25.1, et seq.

93.     Numerosity: The proposed class is so numerous that joinder of all such persons is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. While the exact number of class members is unknown to Plaintiff at this time, upon information and belief, the class comprises more than one hundred individuals.

94.     Common Questions Predominate: There is a well-defined commonality of interest in the questions of law and fact involving and affecting the proposed class, and these common questions of law and fact predominate over any questions affecting members of the proposed class individually, in that all putative class members have been harmed by Defendant Securitas's failure to lawfully compensate them. The common questions of law and fact include, but are not limited to, the following:

  a.     Whether Defendant Securitas failed to compensate putative Class Members at the earned, accrued, and/or promised rate(s) for all hours worked less than forty per week and in excess of forty (40)

each week pursuant to § 95-25.6 and consistent with Defendant's handbook as required pursuant to § 95-25.13; and

b.    Whether Defendant Securitas failed to compensate putative NC Class Members for all of their earned, accrued, and/or promised wages, including, but not limited to, all of their hours worked, straight time, bonuses, vacation, holidays, shift differentials, and/or overtime on their regular pay date, in violation of the NCWHA.

95.    <u>Typicality</u>: The claims of Plaintiff are typical of the claims which could be alleged by any member of the putative class, and the relief sought is typical of the relief which would be sought by each member of the class in separate actions. All putative class members were subject to the same compensation practices of Defendant Securitas, as alleged herein, of failing to pay putative class members for all hours worked at the promised hourly rate(s). Defendant Securitas's compensation policies and practices affected all putative class members similarly, and Defendant Securitas benefited from the same type of unfair and/or unlawful acts as to each putative class member. Plaintiffs and members of the proposed class sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

96.    <u>Adequacy of Representation</u>: Named Plaintiff is able to fairly and adequately protect the interests of all members of the proposed class, and there are no known conflicts of interest between Named Plaintiff and members of the proposed class. Named Plaintiff has retained counsel who are experienced and competent in both wage and hour law and complex class action litigation.

97.    <u>Superiority</u>: A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all class members is impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the

19

unnecessary duplication of effort and expense that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual class members may be small for some in the sense pertinent to the class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially greater than if the claims are treated as a class action. Prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the class, establishing incompatible standards of conduct for Defendant, and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they are not parties. The issue in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

98. <u>Public Policy Considerations</u>: Defendant Securitas violated the NCWHA. Just as current employees are often afraid to assert their rights out of fear of direct or indirect retaliation, former employees may also be fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class action lawsuits provide class members who are not named in the Complaint a degree of anonymity, which allows for vindication of their rights while eliminating or reducing these risks.

99. Pursuit of this action as a class will provide the most efficient mechanism for adjudicating the claims of Plaintiffs and members of the proposed class.

**FIRST CAUSE OF ACTION**
**Violation of the Fair Labor Standards Act Brought by Plaintiff on Behalf of Himself**

20

**and All Similarly Situated**
**29 U.S.C. § 201, *et seq*.**

100.     Plaintiff incorporates by reference all preceding paragraphs as if the same were set forth again fully at this point.

101.     At all relevant times, Defendant has been, and continues to be, an "employer" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203.

102.     At all relevant times, and upon information and belief, Defendant has had a gross operating revenue in excess of $500,000.00.

103.     The FLSA defines "employee" as "any individual employed by an employer," 29 U.S.C. § 203(e)(1), and "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d). The FLSA defines "employ" broadly to cover anyone who is "suffer[ed] or permit[ted] to work." 29 U.S.C. § 203(g).

104.     The FLSA, pursuant to §§ 206 and 207, requires each covered employer, including Defendant, to compensate all non-exempt employees at least minimum wage for all hours worked and at a rate of not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of forty (40) hours in a single workweek.

105.     At all relevant times, Plaintiff was a non-exempt, covered employee pursuant to the FLSA.

106.     Plaintiff typically worked greater than forty (40) hours per week.

107.     At all relevant times, Defendant, pursuant to their uniform policies and practices, willfully failed and refused to pay for all hours worked by Plaintiff, including hours exceeding forty (40) per week as well as pre-shift and post-shift compensable activities performed.

108.     Defendant willfully failed to pay Plaintiffs as required by the FLSA by engaging in

a pattern or practice of permitting or requiring Plaintiff to perform activities integral and indispensable to his principal activities off-the-clock without compensation at the applicable minimum wage and overtime rate for all hours worked, including over forty (40) per week.

109. The foregoing conduct, as alleged above, entitles Plaintiff to liquidated damages in an amount equal to the amount of unpaid wages under 29 U.S.C. § 216(b), since Defendant cannot show it acted in good faith, and a three (3) year, rather than two (2) year, statute of limitations, since Defendant's acts constitute willful violations of the FLSA within the meaning of 29 U.S.C. § 255(a).

110. Named Plaintiff and Putative Plaintiffs each worked more than forty (40) hours in one or more workweeks within the applicable statutory period.

**COUNT TWO**
**Violation of the North Carolina Wage and Hour Act**
**N.C. Gen. Stat. § 95-25.1, *et seq*.**

111. Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

112. At all relevant times, Defendant employed, and/or continues to employ, Plaintiff within the meaning of the NCWHA.

113. The class period for this cause of action is at least two years from the date of the filing of the initial Complaint.

114. At all relevant times, Defendant Securitas has employed, and/or continues to employ, putative Plaintiffs and Rule 23 class members within the meaning of the NCWHA.

115. Pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.6, it is unlawful for an employer to "suffer or permit" an employee to work without paying all owed, earned, and accrued promised wages, on the employee's regular payday.

22

116.   Additionally, North Carolina law requires every employer to notify employees of the promised wages and the day of payment as well as making available a written version of the employment practices and policies regarding promised wages. *See* N.C. Gen. Stat. § 95-25.13(1)-(2).

117.   Acceptable measures of providing employees information about promised wages include "an up-to-date employee handbook or other written statement of policies and practices with regard to promised wages" or through "payroll records, including check stubs, for wages promised in the form of hourly pay or salary or other form whose terms are readily identifiable from payroll records," and employers are required to pay such promised wages. Notification of Employment, 13 N.C.A.C. 12.0805 (2022).

118.   13 N.C. Admin. Code 12 § .0307(c) provides that any ambiguous policies and practices with respect to bonuses, commissions, and other forms of wage calculation "shall be construed against the employer and in favor of employees."

119.   Pursuant to the NCWHA, N.C. Gen. Stat. §§ 95-25.13 and 95-25.6, Defendant was required to pay Plaintiff all wages, when due, for all promised earned and accrued regular, straight, and overtime wages of one and one-half times the promised wage rate, which is a part of all the employees' accrued and earned wages, and which should have been paid when due on the employees' regular payday; this requirement is not covered by the overtime provision under the FLSA.

120.   Invariably, ***"[o]nce a promise is made by an employer, that employer must pay all promised wages, including wage benefits, accruing to its employees based on any policy, agreement or practice that the employer has established***." *See* North Carolina Department of Labor, *Promised Wages Including Wage Benefits*, https://www.labor.nc.gov/workplace-

rights/employee-rights-regarding-time-worked-and-wages-earned/promised-wages-including.

121.     Pursuant to the NCWHA, N.C. Gen. Stat. §§ 95-25.13 and 95-25.6, Defendant Securitas was required to pay Plaintiffs and putative class members all wages, when due, for all promised earned and accrued regular, straight, and overtime wages of one and one-half times the promised wage rate, which is a part of all the employees' accrued and earned wages, and which should have been paid when due on the employees' regular payday; this requirement is not covered by the overtime provision under the FLSA. Moreover, the FLSA's Savings Clause pursuant to § 218(a) provides that employers should comply with the more stringent between the FLSA and state wage and hour laws.   Because the NCWHA provides for more stringent protections than the FLSA, the FLSA does not preempt the NCWHA.

122.     Every employer shall maintain complete and accurate records that document, in relevant part, the hours worked each workweek and all other records required to compute wages. 13 NCAC 12.0801.

123.     Defendant Securitas was aware that Plaintiffs and putative Rule 23 class members were not receiving all straight-time wages for all hours worked up to forty (40) and promised premium wages for hours worked in excess of forty (40) per week pursuant to the promised straight-time rate and corresponding premium overtime rate.

124.     Defendant Securitas employed Named and putative Plaintiffs within the State of North Carolina.

125.     Consistent with the above, Defendant's failure to pay Plaintiffs all owed, earned, and promised wages was in violation of N.C. Gen. Stat. § 95-25.6.

126.     As a result of Defendant's unlawful policies and practices, Plaintiffs have been deprived of compensation due and owing.

127.    Defendant's failure to pay Plaintiffs all owed, earned, and promised wages, despite the fact that, upon information and belief, Defendant Securitas knew of its obligations under the law, entitles Plaintiffs to liquidated damages in an amount equal to the amount of unpaid wages, under N.C. Gen. Stat. § 95-25.22(a1).

128.    Due to Defendant Securitas's unlawful acts, Plaintiffs have been deprived of all compensation due under the law, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to N.C. Gen. Stat. §§ 95-25.13, 95-25.6, 95-25.22(a), (a1), and (d).

129.    Additionally, under the NCWHA, N.C. Gen. Stat. §§ 95-25.6, 95-25.7, and 95-25.12, Defendant was obligated to compensate Plaintiff for his accrued vacation and sick earnings as of the date of his wrongful termination, in light of Defendant's silence on any potential PTO forfeiture. Defendant has failed to compensate these earnings.

130.    Defendant intentionally refused to pay all wages due as set forth in the preceding paragraphs of this Complaint to Plaintiff in violation of the NCWHA.

**COUNT THREE**
**Retaliation in Violation of the FLSA**
**29 U.S.C. § 215(a)(3)**

131.    Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

132.    The FLSA prohibits any person (or employer) from discharging or in any other manner discriminating against any employee because such employee has filed any complaint or instituted any proceeding or investigation into rights protected by the FLSA. *See* 29 U.S.C. § 215(a)(3).

133.    Plaintiff repeatedly reported Defendant's compensation practices, including

Defendant's failure to compensate Plaintiff for all hours worked at the appropriate hourly rates, including overtime rates, on behalf of himself and other employees under his immediate supervision.

134.    Plaintiff, by initiating multiple lawful, good faith inquiries into Defendant's pay practices and requesting payroll documents evidencing the same, participated in a protected activity, pursuant to the FLSA, 29 U.S.C. § 215(a)(3).

135.    In order to further impede investigation into Defendant's compensation of Plaintiff and other employees, Defendant terminated Plaintiff.

136.    Defendant's action of termination Plaintiff was done willfully, maliciously, wantonly, or in reckless disregard for Plaintiff's rights under the FLSA.

137.    Plaintiff is entitled to lost wages and benefits, as well as liquidated, compensatory, and punitive damages.

### COUNT FOUR
**Violation of the North Carolina Retaliatory Employment Discrimination Act**
**N.C. Gen. Stat. § 95-240, *et seq*.**

138.    Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

139.    Defendant is a "person" within the meaning of N.C. Gen. Stat. § 95-240(1).

140.    Filing a claim or complaint, initiating any inquiry, investigation, inspection, proceeding or other action, or testifying or providing information to any person with respect to the General Statutes is a protected activity under N.C. Gen. Stat. § 95-243.

141.    Filing a claim or complaint, initiating any inquiry, investigation, inspection, proceeding, or other action, or testifying or providing information to any person with respect to the General Statutes is a protected activity under N.C. Gen. Stat. § 95-243.

142.     North Carolina law prohibits employers from taking retaliatory action against an employee if they "[f]ile a claim or complaint, initiate any inquiry, investigation, inspection, proceeding or other action, or testify or provide information to any person with respect to" the North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.1 *et seq*. N.C. Gen. Stat. § 95-241. This includes using an employee's exercise or attempted exercise of rights under the NCWHA as a negative factor in employment actions, such as adverse treatment, disciplinary actions, and/or termination. *Id*.

143.     By repeatedly reporting his concerns related to Defendant's compensation practices, including not compensating Plaintiff for all hours worked, and initiating an investigation into Defendant's pay practices, Plaintiff exercised his rights as listed under N.C. Gen. Stat. § 95-241(a) and engaged in protected activity.

144.     Defendant's hostile treatment toward Plaintiff following his inquiry into Defendant's compensation practices as well as the termination of Plaintiff's employment was a willful violation of the Retaliatory Employment Discrimination Act ("REDA"), N.C. Gen. Stat. § 95-240 *et seq*.

145.     As a proximate result of Defendant's conduct, Plaintiff has suffered damages, including, but not limited to, lost wages, emotional distress, humiliation, anxiety, and other compensatory damages.

146.     Accordingly, Plaintiff is entitled to lost wages, lost benefits, and other economics losses as well as treble damages pursuant to N.C. Gen. Stat. § 95-243.

**COUNT FIVE**
**Wrongful Discharge in Violation of North Carolina Public Policy**
**North Carolina Common Law**

147.     Plaintiff incorporates by reference all preceding paragraphs as if the same were

repeated here verbatim.

148. It is the public policy of the State of North Carolina, as expressed in, *inter alia*, N.C. Gen. Stat. § 95-240, Article I, Section 1 of the North Carolian Constitution, and ubiquitously throughout the statutes and laws of this State, including REDA, prohibits employers from taking retaliatory action against an employee for exercising his rights under the law and, more generally, that employees be free from harassment and retaliatory treatment in their employment.

149. North Carolina law prohibits retaliation against an employee for exercising his rights protected under the North Carolina General Statutes. N.C. Gen. Stat. § 95-241(a).

150. Plaintiff participated in legally protected activity by pursuing lawful employment with the expectation of having his constitutional and statutory rights respected and preserved by Defendant.

151. Defendant violated these public policies by terminating Plaintiff after he reported that Defendant was not compensating him or other employees under his supervision as required under the law and after Plaintiff initiated an investigation into such unlawful practices. Such employer conduct tends to be injurious to the public policy of North Carolina and against the public good.

152. The termination of Plaintiff's employment was wrongful as against the public policy of the State of North Carolina.

153. Such termination proximately cause Plaintiff to suffer lost income, emotional distress, and other losses. Accordingly, Plaintiff is entitled to compensatory damages under North Carolina law and interest pursuant to N.C. Gen. Stat. § 24-5(b).

154. Defendant's actions were done maliciously, willfully, or wantonly and in a manner that demonstrates a reckless disregard for Plaintiff's rights. Defendant's officers, managers, and

directors participated in and condoned the conduct described above. As a result, Plaintiff is entitled to recover punitive damages from Defendant pursuant to N.C. Gen. Stat. § 1D-15.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Named Plaintiff, on behalf of himself and all those similarly situated, prays that this Honorable Court:

1.      Issue an Order certifying this action as a collective action under the FLSA, and designate Named Plaintiff as representative of all those similarly situated under the FLSA collective action;

2.      Issue an Order certifying this action as a class action under the NCWHA, and designate Named Plaintiff as representative on behalf of all those similarly situated under the NCWHA class;

3.      Award Plaintiffs and all those similarly situated actual damages for all unpaid wages found due, and liquidated damages equal in amount, as provided by the FLSA, 29 U.S.C. § 216(b), and pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.22(a1);

4.      Award Plaintiffs and all those similarly situated pre- and post-judgment interest at the statutory rate, as provided by the FLSA, 29 U.S.C. § 216(b), and pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.22(a) as applicable;

5.      Award Plaintiffs and all those similarly situated attorney's fees, costs, and disbursements as provided by FLSA, 29 U.S.C. § 216(b), and pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.22(d); and

6.      Award Named Plaintiff all wages, benefits, or other compensation denied to or lost by Plaintiff, and monetary losses sustained, as a result of Defendant Securitas's unlawful actions under REDA;

7.      Award Plaintiff's interest at the prevailing rate, as provided under 29 U.S.C. § 2617(a)(1)(A)(ii) and N.C. Gen. Stat. § 95-243(c);

8.      Award Plaintiffs all consequential damages due as a result of Defendant Securitas's unlawful acts;

9.      Award Plaintiffs punitive damages for Defendant Securitas's willful, wanton, and malicious conduct;

10.     Grant such further legal and equitable relief as the Court deems necessary and proper in the public interest.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted, July 1, 2024.

*/s/ Gilda Adriana Hernandez*
Gilda A. Hernandez (NCSB No. 36812)
Hannah B. Simmons (NCSB No. 59579)
Matthew S. Marlowe (NCSB No. 60035)
**THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC**
1020 Southhill Drive, Ste. 130
Cary, NC 27513
Phone: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
hsimmons@gildahernandezlaw.com
mmarlowe@gildahernandezlaw.com

30